LILLIE LEIGH, ADMINISTRATRIX, v. OMAHA STREET RAILWAY COMPANY.

FILED JANUARY 18, 1893.   No. 4875.

1. **Master and Servant**: PERSONAL INJURIES: DEFECTIVE APPLIANCES: NEGLIGENCE. It is the duty of a master to furnish his servants with such appliances for his work as are suitable and may be used with safety, and if the servant is injured by

reason of defective appliances furnished by his master, the latter will be liable for damages unless he can show that he has used due care in the selection of the same.

2. ———: ———: ———: ———: EVIDENCE: QUESTION FOR JURY. The driver of a street car propelled by horses was given a span of horses to propel the car, one of which was a broncho and would kick when struck, which fact was known to the master but of which the driver was not aware and was not informed by the master. The car was under the care of a conductor, who permitted the same to be overcrowded, every available foot of space, both in the car and on the platform, being filled. On attempting to start the car the broncho refused to pull, whereupon the driver, who was crowded close to the broncho, slapped it with the lines, when it kicked him in the abdomen, causing death in a few hours. *Held*, That there was sufficient testimony to submit the questions of fact to a jury.

ERROR from the district court of Douglas county. Tried below before IRVINE, J.

*Cowin & McHugh* for plaintiff in error.

*John L. Webster* and *Breckenridge, Breckenridge & Crofoot, contra.*

MAXWELL, CH. J.

This is an action to recover for the death of Elmer Leigh, the husband of the plaintiff. The testimony tends to show that on the 5th of September, 1889, the county fair of Douglas county was in progress at North Omaha; that one of the means of transportation to the fair grounds was by way of the cable cars running north on Twentieth street to Lake street; that from that point to the fair grounds the defendant operated a stub line of road, with street cars drawn by horses, the passengers being transferred to the horse cars from the cable cars; that Elmer Leigh was driver of one of the cars on the stub line; that he had been in the employ of the company about three weeks; that one of the horses he was furnished with was a bron-

cho, which the company had owned for some four years; that this animal was gentle in the barn, but when hitched up and struck with a line or whip would kick; that Leigh had never driven the horse until that day, and, so far as appears, did not know of the horse's peculiarities or failings. There is testimony tending to show that this fault was known to the company. The testimony also tends to show that on the day named there was a conductor on the car to collect fares, and that the car was crowded so that every available inch of space within the car and on the platforms was occupied by passengers, and the driver forced by the pressure of the crowd close to the broncho; that the car stopped on the corner of Twentieth and Spence streets to take on another passenger, when the conductor gave the signal to start. This Leigh attempted to do, but the broncho refused to pull, whereupon he slapped it with the lines on the back. The broncho thereupon still refused to pull, but crowded against the other horse and kicked Leigh on the abdomen, of which soon afterwards he died. There is proof of the right of the plaintiff to bring action, the loss sustained by her, and that Leigh's death was caused by the kick. At the conclusion of the plaintiff's testimony, the court, on motion of defendant, granted a nonsuit and dismissed the action. In *Smith v. Sioux City & P. R. Co.*, 15 Neb., 583, Judge REESE very clearly states the rule as follows: "If the evidence so introduced tends in any degree to sustain the allegations of the plaintiff's petition, the action of the court in summarily dismissing the action will be deemed prejudicial to the plaintiff, and a new trial will be ordered." The testimony clearly shows the relation of employe and employer between Leigh and the defendant. This being so, it is a fundamental rule of law that the master is to furnish his servant with such appliances for his work as are suitable and may be used with safety, and if the servant is injured by reason of defective appliances placed in his hands by the master, or his agent, the master will

be liable, unless he can clearly show that he has used due care in the selection of the same. (*Weems v. Mathiewson*, 4 McQueens [Eng.], 215; *Feltham v. England*, 36 L. J., Q. B. [Eng.], 14; *Warner v. Erie R. Co.*, 39 N. Y., 468; *Hough v. Texas & P. Ry. Co.*, 100 U. S., 213; *Wabash Ry. Co. v. McDaniels*, 107 Id., 454–459; *Chicago & N. W. R. Co. v. Sweet*, 45 Ill., 202; *Noyes v. Smith*, 28 Vt., 59; *Northcoate v. Bachelder*, 111 Mass., 322; *Camp Point Mfg. Co. v. Ballou*, 71 Ill., 418; *Kranz v. White*, 8 Bradwell [Ill. App. Ct.], 583.) Now here was an animal which would kick on being struck, and the owner knew it, yet he delivered it to Leigh on the street car, to drive, without informing him of the fault. It is the duty of such driver to stand on the front platform, close to the horses. In effect, a defective, and under some circumstances dangerous, appliance in the propelling power of the car was used. The fact that it was an animal instead of a steam-engine, can make no difference. It was the duty of the defendant to furnish the deceased with a safe team, or inform him of its bad or vicious habits, so that he could guard against them. There is some testimony that the car was overloaded, through the fault of the conductor, and that was one of the causes which contributed to the death of the driver. Upon the whole case it is apparent that there was sufficient evidence to submit to the jury and the court erred in taking it from them. The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.