## THE MANUFACTURERS' FUEL COMPANY

*v.*

## JAMES WHITE.

*Opinion filed June 19, 1907.*

1. MASTER AND SERVANT—*liability of master for injury to servant from dangerous mule—scienter.* The liability of the master for an injury inflicted upon a servant by a mule which the servant had been ordered to use and which the master knew had a propensity to kick when used to haul heavy loads, does not depend upon the fact that the propensity to kick was merely the result of ill-temper and not from any desire on its part to injure a human being.

2. WITNESSES—*jury may consider intelligence and capacity of witnesses.* In cases where there is a conflict in the evidence it is proper to instruct the jury that in determining the weight to be given to the testimony they may consider, among other things, the intelligence and capacity, or want of intelligence and capacity, of the persons testifying.

3. DAMAGES—*when minor may recover for loss of time during minority.* A minor whose parents are dead and to whom no one stands *in loco parentis,* and who has been injured by the negligence of another, is entitled to recover damages for loss of time and diminution of earning capacity during minority.

4. INSTRUCTIONS—*when striking out clause precluding damages for humiliation and disfiguration is proper.* The striking out from an instruction precluding a recovery of damages for mental suffering, except suffering that was the immediate result of pain, of the words "no damages should be assessed for humiliation or disfiguration of appearance," is proper, where there was no evidence to which such language could apply, the injury received being one requiring the removal of a kidney.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Christian county; the Hon. S. L. DWIGHT, Judge, presiding.

This is an appeal from the judgment of the Appellate Court for the Third District affirming a judgment rendered by the circuit court of Christian county against Manufacturers' Fuel Company, appellant, in favor of James White,

appellee, by his next friend, John White, in an action on the case for personal injuries.

The injuries complained of by appellee were occasioned by a kick from a mule owned by appellant, which appellee was driving in appellant's mine, where he was employed as a mule driver. The suit was originally brought to the November term, 1904, of the circuit court. The declaration contained but one count, which alleged that appellant was engaged in the operation of a coal mine, and that in it were used a number of mules to haul empty cars to and loaded cars from the rooms of the miners; that appellee was employed as a driver and used such mule from day to day as appellant directed or required him to use; that it was the duty of appellant to furnish appellee with a mule that was safe, docile and well adapted to the work to be performed by appellee; that appellant carelessly and negligently directed appellee to use a certain unsafe, vicious and dangerous mule named "Pete," which mule had a dangerous and vicious propensity to kick, and which fact was unknown to appellee but well known to appellant; that appellee, while using said mule in the performance of his duties as driver, using due care and caution for his safety and without fault or misconduct on his part, was attacked and kicked by the said mule, causing him the loss of his right kidney and permanently injuring him.

A plea of the general issue was interposed, and a trial was had resulting in a verdict and judgment in favor of appellee, which was reversed and the cause remanded upon appeal to the Appellate Court. The case was re-docketed in the court below and an additional count added to the declaration, which alleged, in addition to the facts averred in the original count, that the said mule Pete, when hitched to a heavy load or over-loaded, was unsafe, vicious and dangerous, and at such times had a dangerous and vicious propensity to kick, all of which was well known to appellant and unknown to appellee; that the danger of being kicked

and injured by the mule was not a danger incident to the employment nor a risk assumed by appellee, and that appellant ordered and directed him to haul with the said mule, loads consisting of two loaded cars, knowing that such loads were a heavy load or an over-load for said mule and that it was ·dangerous to attempt ·to haul such loads with said mule; that the injury complained of occurred while appellee was attempting to haul two loaded pit cars under the order and direction of appellant. The general issue was re-filed and a second trial resulted in a verdict and judgment for $1750 in favor of appellee. At the close of the evidence the court denied a motion by appellant for a peremptory instruction.

The evidence discloses that appellee was first employed as a mule driver by appellant during the month of December, 1903, in one of its coal mines, and during that time occasionally drove the mule Pete. He worked there through December, and then for a short time in January was employed by another, when he returned to work for appellant and continued in its employ until the latter part of March, frequently driving the mule Pete. Appellee was then discharged because it was believed he had whipped one of the mules. After his discharge he was away from the mine about ten days when he was again put to work by appellant, and from that time on drove the mule Pete almost continuously until the time of his injury, on the second day of May, 1904. Appellee was then seventeen years of age. The mule Pete, which had been used in the mine for six or seven years, was a strong, spirited animal, and when kindly treated and used in hauling ordinary loads was easy to handle, but when struck or used in hauling heavy loads had a vicious and unusual propensity to kick and was dangerous to the person driving or handling him. Up to the day prior to the date of his injury appellee had been hauling one car of coal at a time with this mule, and this was considered an ordinary load. On that day appellee was in-

structed by appellant to haul two cars of coal at a trip out of the entry known as the tenth south. In this entry was a good, clean track, and appellee had no difficulty in making the two-car trips with the mule. On the day following he was ordered to pull two-car trips out of the ninth south, which had a dirty track, that made the load more difficult for the mule. Appellee, while making a trip, had picked up one loaded car and had stopped at the neck of one of the rooms for the second one. The second car was pushed out, coupled to the rear of the first, and appellee took his seat on the front end of the forward car directly behind the mule, which was hitched to the car by means of a chain. As soon as appellee was seated he spoke to the mule, which started forward until he tightened the chain and then began to back, kicking viciously. When the mule started back appellee made an attempt to get out of the way but failed, and was struck on the right side of the lower part of the abdomen, injuring one of his kidneys so seriously that he was compelled to have it removed a short time afterward to save his life.

Appellant urges as grounds of reversal, first, the court erred in not peremptorily instructing the jury to find a verdict for appellant when requested to do so at the close of all the evidence; second, the court erred in passing on instructions; third, the court erred in the admission of evidence offered by appellee.

HOGAN & WALLACE, (R. J. FOLONIE, of counsel,) for appellant.

McQUIGG & DOWELL, (J. C. McBRIDE, of counsel,) for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is first urged that the court should have directed a verdict for the defendant because there was no evidence that the defendant ordered the plaintiff to use the animal,

and that there was uncontradicted evidence that the plaintiff asked to be allowed to use the particular mule that injured him.   We find, on examination of the abstract and the additional abstract, that there was evidence that the defendant did give the order as charged in the declaration and that the plaintiff testified that he did not ask to be allowed to use this animal.   It is then said that the peremptory instruction should have been given because the proof did not show that the defendant had knowledge of the vicious and dangerous propensities of the animal, and that the uncontradicted evidence showed that the plaintiff had, or should have had, knowledge of such propensities, and that having such knowledge, or being chargeable therewith, he must be regarded as having assumed the risk.   We are not able to agree with appellant on either of these propositions, and conclude that the motion for a directed verdict was properly denied.

Instructions given did not require that the jury find, as a necessary element of plaintiff's cause of action, that the animal had a vicious and dangerous propensity to kick mankind, and it is urged that a propensity to kick, which was merely an evidence of ill-temper and not the result of a desire to injure a human being, is not sufficient to establish the liability of the master, the owner of the animal, even where he has knowledge of its propensity and where the servant injured has no such knowledge and is not chargeable with such knowledge.   A number of authorities have been cited by appellant in support of its position in this regard, but we find, upon examination, that the doctrine upon which it relies has not been announced or held applicable, in any case to which we have been referred, where a servant has been directed to use the animal in question in the performance of the duties of the employment.   On reason we are unable to perceive any distinction between directing the use of an animal that is dangerous on account of its peculiar inclination to kick under certain circum-

stances, even though its efforts in that regard be not particularly directed against mankind, and directing the use of an instrumentality or appliance of a mechanical nature which is dangerous to the servant.

By the plaintiff's first given instruction the jury were advised that in determining the weight to be given the testimony of the witnesses they had a right to take into consideration, among other things, the intelligence or want of intelligence, capacity or want of capacity, of the persons testifying. It is urged that in some cases intelligence and capacity, or the lack thereof, may be proper for the consideration of the jury, in others not. It is too plain for argument that in every case where there is a conflict in the evidence an instruction of the character of this one is proper.

The only objection made to the second instruction given at the request of the plaintiff which is entitled to consideration has been disposed of by what we have said in reference to the point that there could be no recovery unless the animal's efforts in kicking were habitually directed against some member or members of the human family.

The third instruction given at the request of the plaintiff was as to the measure of damages. It has, in substance, heretofore received the approval of this court, but it is objected that it permitted appellee to recover for loss of time and for the diminution of his earning capacity during his minority. It appears that both his parents are dead, and we think it fairly inferable from the evidence that both were dead at the time he received the injury. It does not appear that any other person stands *in loco parentis* to him. In *Partridge* v. *Arnold,* 73 Ill. 600, it was held that a father does not have any present valuable property in the future labor of a minor son, and from *Scott* v. *White,* 71 Ill. 287, it appears that where the minor has been emancipated he is entitled to maintain a suit for his wages. In *Barnes* v. *Barnes,* 50 Conn. 572, it was held that a minor son becomes emancipated by the death of his father so as to relieve him

from the obligations of a contract for his services during the term of his minority, made by his father. From these authorities we conclude that a minor whose parents are deceased and to whom no one stands *in loco parentis* is in precisely the same situation, so far as contracting for and being entitled to receive his own wages is concerned, as though he had been emancipated by his parents. That being true, appellee, if he have a valid cause of action, is entitled to recover for loss of time and for diminution of his earning power, if any, during minority.

The third instruction given at the request of the defendant was to the effect that no damages should be awarded for mental suffering, except that suffering was the immediate result of physical pain. The instruction, as requested, concluded with the following words: "No damages should be assessed for humiliation or disfiguration of appearance." The court modified the instruction by striking out the language just quoted. In this there was no error, as there was no evidence to which that part of the instruction could apply.

The court refused eight instructions asked by the defendant. The objections to the first, second, third, fifth, sixth and eighth of these are disposed of by what has already been said in this opinion.

Defendant's fourth refused instruction deals with the question of assumed risk, and is fully covered by the eleventh instruction given at its request.

Defendant's seventh refused instruction deals with the question of *scienter,* and the proposition therein contained is found in the second instruction given at the request of the plaintiff.

In offering evidence to show the propensity of the animal in question when overloaded or whipped, counsel for appellee asked a number of questions of men who had been employed in and about the mine where this animal was used, which were objected to, some on the ground that they called for conclusions, others on the ground that they were im-

228—13

material and irrelevant, others on the ground that each called for an expert opinion in matters relating to which the witness had not qualified as an expert. We have considered these various interrogatories in connection with the answers given by the witnesses, and are of the opinion that the cause of the appellant was not prejudiced by the action of the court in overruling the objections.

Appellee has filed a further abstract and moves to tax the costs thereof in this court. We are of the opinion that the original abstract was not as full and complete as it should have been and that the additional abstract was necessary. Appellee's motion will accordingly be allowed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*